IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LESHA LANETT STARNES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 15-0110-CV-W-ODS ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits. The Commissioner's decision is affirmed.

I. INTRODUCTION

Plaintiff was born in 1960, completed high school, and has past work experience as a data entry clerk. The ALJ determined Plaintiff's severe impairments include "degenerative joint disease, vertigo, osteoarthritis, posttraumatic stress disorder, adjustment disorder with mixed anxiety and depressed mood, and lumbar bulging discs with stenosis of the neural foramina." R. at 14. The ALJ found Plaintiff has the residual functional capacity ("RFC") to:

> Perform light work…involving lifting and/or carrying 10 pounds frequently, 20 pounds occasionally, standing and/or walking for up to six hours in an eight-hour workday, and sitting up to six hours in an eight-hour workday. She must be able to alternate sitting and standing at least every 30 minutes. She can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds, or balance. She can occasionally stoop, kneel, crouch and crawl. However, she must avoid operational control of moving machinery, unprotected heights, hazardous machinery, extreme cold, wetness and excessive vibration. She can handle and finger no more than frequently. She is limited to simple, routine and repetitive tasks, no interaction with the public, and she can work around co-workers throughout the day but have only occasional interaction with co-workers.

R. at 17. Based on the testimony of a vocational expert, the ALJ determined Plaintiff could perform work as a price marker, folding machine operator, and a sub assembler. R. at 25.

## II. LEGAL STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence when reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991) (citing *Hutsell v. Sullivan*, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A.

Plaintiff asserts the ALJ did not properly consider the medical opinion evidence of Record. Generally speaking, a treating source's opinion is entitled to deference. This general rule is not ironclad; a treating source's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the Record. *E.g.*, *Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012); *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996). The ALJ may discount a treating physician's opinion if the ALJ provides good reasons for doing so. *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

2

1. Dr. Rebecca Turner

Dr. Rebecca Turner ("Turner") completed a Medical Source Statement ("MSS") addressing Plaintiff's physical functioning. The ALJ discounted Turner's opinion for several reasons. First, the ALJ found Turner's described physical limitations inconsistent with Plaintiff's statement that the main reason she cannot work is due to stress and a lack of focus. R. at 23. Plaintiff argues that this statement does not preclude her from suffering from physical problems which are, in and of themselves, disabling. While the statement does not necessarily mean that Plaintiff does not have disabling physical conditions, it does undermine Plaintiff's assertions regarding the severity of her physical impairments. Moreover, this statement was only one of many reasons the ALJ discounted Turner's opinion.

Next, the ALJ discounted Turner's opinion because it was a checklist-style form without any rationale for the conclusions. R. at 23. Plaintiff argues that these types of forms are routinely used and are considered proper evidence. Plaintiff's assertions may be true; nonetheless, an ALJ may discount an opinion when it is in checklist form and "cites no medical evidence, and provides little to no elaboration." *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

The ALJ also found Plaintiff's daily activities were inconsistent with the limitations described in Turner's opinion. For example, Plaintiff prepares meals with several courses each day, she cleans her house each day for one to two hours, does the laundry one to three times a week for two to four hours, and irons once a week for one to two hours. R. at 187. Plaintiff also cares for her daughter who has Down's syndrome. This care includes bathing, feeding, clothing, and taking her to doctor's appointments. R. at 190. Plaintiff runs errands two to three times a week, and often drives herself. R. at 188. Plaintiff maintains that these activities do not show that she is able to participate in substantial gainful activity. However, Plaintiff's daily activities are wholly inconsistent with the limitations Turner cites in her opinion; and thus, the ALJ properly discounted Turner's opinion on this basis. *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006).

Further, the ALJ discounted Turner's opinion because it was inconsistent with her

3

own treatment notes. While Turner observes Plaintiff has joint stiffness in her hands, dizziness, and moderate lower back pain; Turner also repeatedly notes that Plaintiff experiences no weakness, no joint pain, and no muscle pain and that Plaintiff has normal range of motion, normal strength, and a steady gait. R. at 237, 239, 241, 244, 246, 249, 252, 255, 258, 261, 264, 267, 297, 300, 316, 319, 321, 324, 327, 329, 339, 341, 342, 373, 375, 377, 378. Plaintiff argues that Turner's "normal" findings in her treatment notes do not necessarily undermine her opinion, because Turner is making different determinations during a doctor's visit than she is making when she is filling out her MSS form. Plaintiff cites no legal authority for this position. Further, Plaintiff's argument is actually an admission that Turner's treatment notes do not support the limitations described in her opinion. Additionally, Plaintiff points to an MRI Turner ordered to prove the medical record supports Turner's opinion. However, the MRI findings almost always describe Plaintiff's back issues as minor, minimal, or moderate. R. at 370. Because Turner's treatment notes were inconsistent with her opinion, the ALJ properly discounted her opinion. *Hacker*, 459 F.3d at 937; *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005).

Finally, Plaintiff argues that because the ALJ found that there was a conflict in the evidence and Turner's opinion, the ALJ should have recontacted Turner for clarification. The Court finds this argument unpersuasive. The ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Rather, "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (internal citations and quotations omitted). Here, the ALJ was not required to recontact Turner because "there is no indication that the ALJ felt unable to make the assessment [s]he did and [her] conclusion is supported by substantial evidence." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). The Record contained ample medical records and other evidence for the ALJ to determine Plaintiff's functional limitations.

4

Case 4:15-cv-00110-ODS   Document 15   Filed 11/30/15   Page 4 of 10

## 2. Dr. Shahbaz Kahn

Dr. Shahbaz Kahn ("Kahn") completed an MSS addressing Plaintiff's mental functioning. The ALJ discounted Kahn's opinion for a variety of reasons. First, the ALJ discounted Kahn's opinion because it was in checklist form and included only conclusions with no explanation. R. at 19. Again, Plaintiff maintains that checklist forms are frequently used and are deemed proper evidence. While Plaintiff may be correct in this regard, the ALJ is permitted to discount an opinion when it is in checklist form and "cites no medical evidence, and provides little to no elaboration." *Anderson*, 696 F.3d at 794. The Court's review of the MSS reveals Kahn offered no explanation for the described limitations. R. at 333-334.

The ALJ also discounted Kahn's opinion because it was inconsistent with Plaintiff's daily activities. Kahn asserts Plaintiff has marked limitations in her ability to interact appropriately with the public, with supervisors, and with co-workers. R. at 334. Kahn claims Plaintiff has marked limitations in her ability to complete a normal work-day and work-week without interruptions from psychologically-based symptoms. *Id*. Finally, Kahn states Plaintiff has moderate to marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. *Id*. Kahn's described limitations are belied by Plaintiff's engagement in a variety of daily activities as previously discussed in Section III.A.1. While Plaintiff argues her activities do not demonstrate her ability to participate in substantial gainful activity, the wide variety of daily activities in which Plaintiff engages is inconsistent with the marked limitations Kahn assigned to her. As such, the ALJ properly discounted Kahn's opinion. *Davidson*, 501 F.3d at 990; *Hacker*, 459 F.3d at 938.

Next, the ALJ discounted Kahn's opinion because it was inconsistent with Plaintiff's GAF score of 58. The Court acknowledges Plaintiff's argument that a GAF score is only a "snapshot" of her mental functioning and that there is evidence of lower GAF scores in the Record. Nevertheless, a GAF score of 58 is inconsistent with the limitations Kahn described, and this was only one factor upon which the ALJ rested her opinion.

The ALJ also determined Kahn's opinion and treatment notes were based on Plaintiff's subjective complaints, which the ALJ did not find credible. Plaintiff argues the

5

ALJ does not explain or cite evidence for this assertion. The Court finds this argument unavailing. In her discussion of Kahn's opinion, the ALJ observed Kahn had assigned various GAF scores to Plaintiff. R. at 20. The ALJ cited Exhibit 14F twice in support of this observation. Exhibit 14F contains Kahn's treatment notes, and the various GAF scores Kahn assigned Plaintiff are found in Kahn's treatment notes. Then, the ALJ determined that Kahn's assigned GAF scores were based on Plaintiff's subjective complaints. While the ALJ does not cite to Exhibit 14F a third time, it is clear the ALJ is asserting that the GAF scores in Kahn's treatment notes (found in Exhibit 14F) are based on Plaintiff's subjective complaints. A review of Kahn's treatment notes reveal that they are, in fact, largely based on Plaintiff's subjective complaints. R. at 346-365. An ALJ may properly discount a medical opinion when it is based on Plaintiff's subjective complaints. *McDade v. Astrue*, 720 F.3d 994, 999 (8th Cir. 2013).

Finally, Plaintiff argues that if the ALJ determined there was an ambiguity between Kahn's treatment notes and Kahn's opinion, the ALJ had a duty to recontact Kahn for clarification. Again, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's opinion." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). Here, the ALJ did not need to recontact Kahn because the Record contained sufficient medical records and other evidence to determine Plaintiff's functional limitations.

### 3. Tracy Dunlap

Tracy Dunlap ("Dunlap"), a Licensed Clinical Social Worker and Plaintiff's therapist, completed an MSS addressing Plaintiff's mental functioning. Plaintiff argues the ALJ improperly discounted Dunlap's opinion for several reasons. First, Plaintiff maintains the ALJ discounted Dunlap's opinion because it was in a checklist form, and it was inappropriate for the ALJ to discount Dunlap's opinion for this reason. However, the ALJ did not discuss whether Dunlap's opinion was in checklist form, nor did the ALJ discount Dunlap's opinion on this basis. R. at 20. Plaintiff also argues that despite the ALJ's assertion otherwise, Plaintiff's daily activities did not undermine the weight of Dunlap's opinion. Again, the ALJ did not discount Dunlap's opinion due to Plaintiff's daily activities.

6

The ALJ did discount Dunlap's opinion for a variety of other reasons. The ALJ discounted Dunlap's opinion because she opined on an issue reserved for the Commissioner. Specifically, Dunlap asserted Plaintiff would be unable to maintain a job. The ALJ is permitted to discount Dunlap's opinion for this reason. *McDade v. Astrue*, 720 F.3d 994, 1000-1001 (8th Cir. 2013).

The ALJ also determined Dunlap's opinion was internally inconsistent, in that Dunlap assigned Plaintiff a GAF score of 58 but also claimed Plaintiff acted as though she suffered from a traumatic brain injury. Plaintiff argues, again, that a GAF score is only a snapshot of Plaintiff's mental functioning. Nonetheless, a score of 58 is inconsistent with the assertion that Plaintiff behaves as if she has a traumatic brain injury. Dunlap's own inconsistency undermines her opinion and is a proper basis for the ALJ to discount her opinion.

Further, because Dunlap was not an acceptable medical source, the ALJ gave it less weight. Plaintiff argues that, by itself, this is not a sufficient reason to discount Dunlap's opinion, and that alternative providers such as Dunlap provide valuable information regarding functional limitations. First, the ALJ did not discount Dunlap's opinion merely because Dunlap was not an acceptable medical source. Second, while alternative providers may provide helpful information about a claimant's functional limitations, the ALJ is permitted to afford Dunlap's opinion less weight because she is not acceptable medical source. *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006).

Next, the ALJ determined Dunlap's opinion was inconsistent with the medical records. Plaintiff notes that the ALJ did not cite any evidence for this assertion. The Court acknowledges that this is the case, but the Court also finds that this assertion was only of many reasons the ALJ discounted Dunlap's opinion.

Finally, Plaintiff argues that if the ALJ determined there were discrepancies between Dunlap's treatment records and opinions, then the ALJ should have recontacted Dunlap to resolve these inconsistencies. As previously stated, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's opinion." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). Here, the ALJ did not need to recontact

7

Dunlap because the Record contained sufficient medical records and other evidence to determine Plaintiff's functional limitations.

4.

Plaintiff argues that the opinion of Dr. Sara Ackerman ("Ackerman"), a consultative examiner, should not be given more weight than the opinion of Turner, one of Plaintiff's treating physicians. Similarly, Plaintiff argues that the opinions of Dr. Alan Israel ("Israel"), a consultative examiner, and of Dr. Martin Isenberg ("Isenberg"), a non-examining consultant, should not be given more weight than the opinions of Kahn and Dunlap, who are Plaintiff's treating mental health providers. The Court finds this argument unpersuasive. An ALJ may substitute the opinions of non-treating physicians in several instances, including where a treating physician "renders inconsistent opinions that undermine the credibility of such opinions." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000); *see also Goetz v. Barnhart*, No. 05-2267, 2006 WL 1512176, 182 Fed. Appx. 625, 626, at *2 (8th Cir. June 2, 2006). As discussed above, the ALJ found numerous problems with the opinions of Plaintiff's treating health providers, including inconsistencies in each of their opinions.

Moreover, "in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). The ALJ must base the RFC on "all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); *see also Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014). Further, the ALJ is not required to rely on opinion evidence in determining Plaintiff's RFC. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Here, the ALJ relied on Plaintiff's daily activities and on other medical evidence. This evidence was sufficient to support the ALJ's determination regarding Plaintiff's functional limitations.

5.

Plaintiff contends that the ALJ also erred in assigning Isenberg's opinion weight because his opinion was without the benefit of subsequently created medical records.

8

While Isenberg did not have the benefit of subsequently created medical records, this does not undermine Isenberg's opinion regarding Plaintiff's condition on the day the opinion was rendered. Plaintiff does not provide, and the Court is not aware of, any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion necessarily must be discounted because it is not based on those records. Thus, the Court discerns no error on this point. Furthermore, the additional records are not inconsistent with Isenberg's findings. Thus, the Court cannot say the ALJ's decision falls outside the "available zone of choice." *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) (internal citations and quotations omitted).

B. New Medical Evidence

Plaintiff notes she submitted to the Appeals Council new medical evidence which was not part of the Record when the ALJ rendered her decision. On December 15, 2014, the Appeals Council considered this new evidence in affirming the ALJ's decision. R. at 2, 5.

"If…the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992) (citations omitted). Here, while some medical records indicate she received an epidural for back pain, generally speaking, the new evidence does not indicate greater limitations than the ALJ assigned to Plaintiff. Moreover, most of the new evidence repeats the same or similar findings as the initially submitted evidence. Thus, the Court finds substantial evidence exists in the Record, including the new evidence, to support the ALJ's decision.

Plaintiff also maintains remand is required because the Appeals Council used boilerplate language in denying Plaintiff's request for review of the ALJ's decision. While the Appeals Council's discussion is not terribly lengthy, Plaintiff does not cite, nor is the Court aware, of any legal authority which requires remand for this reason.

IV. CONCLUSION

The Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

                                            /s/ <u>Ortrie D. Smith</u>
                                            ORTRIE D. SMITH, SENIOR JUDGE
DATE: November 30, 2015              UNITED STATES DISTRICT COURT